

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LYON FINANCIAL SERVICES, INC. d/b/a U.S. BANCORP BUSINESS EQUIPMENT FINANCE GROUP,<br><br> Plaintiff,<br><br>  v.<br><br>ILLINOIS PAPER AND COPIER COMPANY,<br><br> Defendant.<br><br>―――――――――――――――――――<br><br>ILLINOIS PAPER AND COPIER COMPANY,<br><br> Counter-Plaintiff/Third-Party Plaintiff,<br><br>  v.<br><br>LYON FINANCIAL SERVICES, INC., d/b/a U.S. BANCORP BUSINESS EQUIPMENT FINANCE GROUP,<br><br> Counter-Defendant,<br><br> and<br><br>VILLAGE OF BENSENVILLE and JAMES A. JOHNSON,<br><br> Third-Party Defendants. | No. 10 C 7064<br><br>The Honorable William J. Hibbler |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lyon Financial Services (hereinafter "Lyon") brought this action against Defendant Illinois Paper and Copier Company (hereinafter "Illinois Paper") alleging breach of a contract titled "Office Equipment Finance Services Partnership Agreement" (hereinafter the "Finance Agreement"). Lyon claimed that, pursuant to the contract, Illinois Paper presented

1

Lyon with a lease agreement whereby the Village of Bensenville would lease copying equipment from Lyon that would be supplied by Illinois Paper. Lyon entered into that lease (hereinafter the "Lease Agreement") with the Village. However, according to Lyon, the Village of Bensenville later declared the lease unenforceable. Lyon thus sued Illinois Paper for breaching its promise in the Finance Agreement that all leases it presented to Lyon would be valid and enforceable. Illinois Paper responded by filing a counterclaim against Lyon for breach of fiduciary duty and third-party claims against the Village of Bensenville and its representative, James Johnson, for fraud, breach of contract, and aiding and abetting Lyon's alleged breach of fiduciary duty. Lyon, the Village, and Johnson all now move the Court to dismiss Illinois Paper's counterclaim and third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, the Court GRANTS their motions.

## *BACKGROUND*

Illinois Paper alleges the following facts in its pleading, which the Court must accept as true for purposes of the Rule 12(b)(6) motions. *Disability Rights Wisc., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

Lyon attached copies of the Finance Agreement and the Lease Agreement to its original complaint. In its answer, Illinois Paper admits that it entered into the Finance Agreement, and admits that Lyon attached true and correct copies of both agreements, but interprets and characterizes those agreements differently. Illinois Paper also alleges that the two writings attached to Lyon's complaint do not account for the entire agreement between the parties to this suit.

Illinois Paper's representative signed the Finance Agreement on October 20, 2008.[1] As part of the Finance Agreement, Lyon agreed to "accept[] lease transactions from [Illinois Paper] and administer[] the lease program." In exchange, Illinois Paper agreed to give Lyon "the first right to review all 'maintenance inclusive' transactions for 90 days beginning October 1, 2008 where a customer inquire[d] of [Illinois Paper] for lease financing" of copying equipment. Illinois Paper denies that it presented the Lease Agreement to Lyon for review pursuant to this term, however. Instead, Illinois Paper claims the Lease Agreement was a product of a longstanding business relationship between Lyon and the Village whereby Lyon had financed the Village's prior lease of copying equipment from a different supplier.

Three other terms to the Finance Agreement are especially relevant to this dispute. First, both parties to the agreement agreed not to disclose to anyone: "(i) the fact that the parties ha[d] this Vendor Agreement and the nature and general subject matter of any discussions or (ii) any information disclosed by any means between the parties." Second, Illinois Paper "represent[ed] and warrant[ed] that all lease transactions presented to [Lyon] for review [we]re valid and fully enforceable agreements." Third, the agreement contained a choice of law clause that stated that the agreement "and performance here under shall be governed by the laws of the State of Minnesota."

The Lease Agreement provided for a six-year lease of specific copying equipment by the Village from Lyon. The Village was listed as the customer (the lessee), Lyon was listed as the owner of the equipment, and Illinois Paper was listed as the supplier of the equipment. Under the agreement, the Village was to make 72 monthly payments of $9,500, totaling $684,000, to

---

[1] The copy of the contract attached to Lyon's complaint does not contain a signature by a representative from Lyon despite the presence of a signature line for the company. Illinois Paper mentions this deficiency in its pleading, but does not seem to contest the validity of the agreement as it bases its claim against Lyon on the duties created by the Finance Agreement. Thus, the Court attaches no significance to this fact for purposes of deciding the instant motions.

3

Lyon. The agreement included an option for the Village to purchase the equipment for fair market value at the end of the lease. If the Village was unable to appropriate funds for the lease at any point, the agreement provided for Lyon's sole remedy to be repossession of the equipment. The agreement contained the following term, in relevant part, concerning Johnson's signature:

> Each signor...warrants that he/she is fully conversant with the governing relevant legal and regulatory provisions and has full power and authorization to bind [the Village]. Signor(s) for [the Village] further warrant(s) its governing body has taken the necessary steps...under applicable law to arrange for acquisition of the Equipment.

Johnson signed the Lease Agreement on October 27, 2008. A representative from Lyon signed it on December 12, 2008. An addendum to the agreement stated that it is to be "governed by and construed in accordance to Illinois law."

Illinois Paper alleges that these agreements both arose out of the determination by Lyon and the Village, some time prior to October 2008, that the Village wanted to acquire new copying equipment. Lyon then proposed to Illinois Paper that Illinois Paper would sell copying equipment to Lyon, which the Village would thereafter acquire from Lyon. Ultimately, Lyon agreed to pay Illinois paper $510,658 for the equipment. However, at the same time, Illinois Paper was to pay Lyon $148,200 on behalf of the Village in order to retire the Village's remaining obligations to Lyon for its previous copying equipment lease. Illinois Paper made its payment when the Village and Lyon entered into the Lease Agreement. Neither of these payments is memorialized in either written agreement presently before the Court.

In mid-2010, the Village stopped making payments under the Lease Agreement, contending that the agreement was unenforceable because it was for longer than sixty months, in violation of the Illinois Municipal Code, 65 Ill. Comp. Stat. 5/11-76-6 (limiting municipalities to

4

five-year equipment leases). Lyon never sought a determination from any court that the agreement was in fact unenforceable. Instead, it filed the instant suit against Illinois Paper.

Illinois Paper contends that the Finance Agreement and the Lease Agreement are part of an integrated contract between Lyon, Illinois Paper, and the Village. It contends that the Finance Agreement created a partnership between Lyon and Illinois Paper. It also contends that the Lease Agreement is not in fact a lease agreement, but is actually a purchase agreement. Thus, it argues that the Lease Agreement remains enforceable. Given these contentions, Illinois Paper states four claims.

First, it claims that Johnson, acting on behalf of the Village, misrepresented his familiarity with applicable law and/or the fact that the Village had taken the necessary steps to enter into the Lease Agreement. Illinois Paper claims that Johnson and the Village made this misrepresentation with the intention of misleading Illinois Paper into entering into the alleged integrated contract, including the Finance Agreement. Thus, Illinois Paper claims that Third-Party Defendants committed fraud in executing a scheme to relieve the Village of its debt to Lyon and diminish its obligations for payment under the Lease Agreement. Second, Illinois Paper claims, in the alternative, that Johnson and the Village breached the integrated contract with Illinois Paper by defaulting despite the contract's continued enforceability.

Third, Illinois Paper claims that, by proceeding with this lawsuit without seeking a determination as to the Lease Agreement's enforceability, Lyon breached its fiduciary duties to Illinois Paper. Finally, the company also claims that the Village and Johnson aided and abetted Lyon in this breach by claiming that the contract was unenforceable. Illinois Paper alleges that the other parties conspired in order to relieve the Village of its obligations under the contract and shift them to Illinois Paper.

*DISCUSSION*

I. **Standard of review**

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss under federal notice pleading, a claimant must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are generally not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). However, a claimant must plead claims sounding in fraud with particularity. Fed. R. Civ. P. 9(b). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the claimant's favor. *Disability Rights Wisc.*, 522 F.3d at 799.

II. **Analysis**

A. **Fraud**

The Court can dispose of Illinois Paper's fraud claims without much analysis. Illinois Paper claims fraud based on Johnson's allegedly false representations regarding his familiarity with the law and his authority to enter into the Lease Agreement on behalf of the Village. The company claims that it relied on these representations in deciding to: (1) enter into the Finance Agreement with Lyon; (2) assist the Village in paying off the debt it owed to Lyon; and (3) sell copying equipment to Lyon for the purpose of leasing it to the Village.

With regard to at least the first claim of reliance, Illinois Paper's claim fails because it entered into the Finance Agreement a week prior to Johnson's representation. Illinois Paper claims that it received notice of Johnson's representation through the Least Agreement itself.

6

Thus, it is impossible for Illinois Paper to have relied on this representation in making its decision to enter into the Finance Agreement. Arguably, Illinois Paper's other claims fail on the related ground that it has not pleaded the dates upon which it completed any of its actions with sufficient particularity to survive Rule 9(b).

The Court need not decide the motion on those grounds, however, because Illinois Paper's fraud claims also fail because the allegedly fraudulent statements were essentially representations of law. "As a general rule, one is not entitled to rely upon a representation of law since both parties are presumed to be equally capable of knowing and interpreting the law." *City of Aurora v. Green*, 126 Ill. App. 3d 684, 688, 467 N.E.2d 610, 613 (Ill. App. Ct. 1984). Moreover, "courts presume a party doing business with a government entity knows two things: (1) he cannot enforce a contract unless the applicable statutory method of executing the contract has been followed; and (2) statutes and ordinances limit an official's authority to bind a government entity to a contract." *D.S.A. Fin. Corp. v. Cnty. Of Cook*, 345 Ill. App. 3d 554, 561, 801 N.E.2d 1075, 1081 (Ill. App. Ct. 2003).

Illinois Paper argues that Johnson's representations that he was "fully conversant" with relevant law, that he had the power and authority to bind the Village, and that the Village had taken all necessary steps to enter into the Lease Agreement were not representations of law, but of fact. However, despite Illinois Paper's semantic distinction, it is clear that the company is claiming that it relied upon the legal conclusions that it could draw from Johnson's representations. Illinois Paper was not harmed by its reliance on Johnson's claim that he was "fully conversant" with the governing law unless it understood this to mean that the governing law allowed for the agreement. It was not harmed by relying on Johnson's claim that he had the power and authority to bind the Village unless it believed that was an accurate interpretation of

the statutes and ordinances that limit an official's authority to bind a government entity to a contract. It was not harmed by relying on his claim that the Village had taken all necessary steps to enter into the Lease Agreement unless it believed that Johnson was correct about what the law actually required the Village to do. The Court will not turn a blind eye to the actual import of Johnsons' statements in order to relieve Illinois Paper of its obligation to understand the law governing a contract before agreeing to it. For these reasons, the Court grants Third-Party Defendants' motion to dismiss the fraud claim.

### B. Breach of fiduciary duty

Illinois Paper's breach of fiduciary duty claim is also flawed. Essentially, Illinois Paper relies upon the fact that the Finance Agreement was titled "Office Equipment Finance Services Partnership Agreement" to support its claim that the agreement created a legal partnership and, accordingly, fiduciary duties. However, as detailed below, the remainder of the agreement does not support this contention.

As an initial matter, the parties dispute what law applies to this claim. Lyon argues that the choice of law provision in the Finance Agreement requires application of Minnesota law. Illinois Paper argues, on the other hand, that claims alleging breach of fiduciary duties sound in tort and that Illinois choice of law rules therefore require application of Illinois law. There is actually conflicting case law in this district on this issue, some supporting application of contract choice of law rules to claims alleging a breach of fiduciary duty and some applying the rules applicable to tort claims. *See Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 n.12 (N.D. Ill. 1997) (compiling cases). Given that Illinois Paper claims that the partnership and the attendant duties arose from the contract itself, and that the issue in this case is ultimately one of contract interpretation, the Court is inclined to apply the choice of law provision present in the agreement.

8

However, the proper choice of law is inconsequential because for purposes of deciding this motion, Minnesota law and Illinois law are identical. *Compare* Minn. Stat. § 323A.0101 *et seq.* *with* 805 Ill. Comp. Stat. 206/100 *et seq.*

Because the question of whether the agreement formed a partnership is one of contract interpretation, the Court may answer it as a matter of law unless the contract is ambiguous on the issue. *BancInsure, Inc. v. Marshall Bank, N.A.*, 453 F.3d 1073, 1075 (8th Cir. 2006) (applying Minnesota law); *Gassner v. Raynor Mfg. Co.*, --- N.E.2d ----, 2011 WL 1632352, *8 (Ill. App. Ct. Apr. 27, 2011) (applying Illinois law). Illinois Paper points only to the title of the agreement in support of its contention that the contract creates a partnership. Thus, the Court must determine whether the title of the agreement alone creates ambiguity on this issue.

Generally speaking, a partnership is an "association of 2 or more persons to carry on as co-owners a business for profit." Minn. Stat. § 323A.0202(a); 805 Ill. Comp. Stat. 206/202(a). It is the existence of such an association that is relevant, not their intent to form something called a partnership. *See* Minn. Stat. § 323A.0202(a) (providing that such an association "forms a partnership, whether or not the persons intend to form a partnership"); 805 Ill. Comp. Stat. 206/202(a) (same). There is no indication anywhere in the substance of the Finance Agreement that Lyon and Illinois Paper intended to "carry on as co-owners a business for profit." They certainly did not intend to hold themselves out to the world as co-owners of a single business as the agreement contains a non-disclosure provision forbidding either party from disclosing its existence. The agreement contains no provisions regarding profit-sharing or really any terms regarding profits at all. Nor does the agreement mention fiduciary duties even once.

Moreover, even Illinois Paper's allegations regarding the particular deal giving rise to this lawsuit, a transaction that was apparently governed at least in part by the terms of the

9

Finance Agreement, do not remotely resemble the operation of a joint business. Instead, Illinois Paper claims that Lyon paid it $510,000 for the purchase of copying equipment. The laws in both Minnesota and Illinois make clear that the presumption that a person who shares in the profits of a business is a partner does not apply when the profits were received, as here, as payment "for services of an independent contractor" or "for the sale of...property." Minn. Stat. § 323A.0202(c)(3); 805 Ill. Comp. Stat. 206/202(c)(3).

The Court holds that the title of the Finance Agreement alone is not enough to create an ambiguity as to whether it created a partnership when the substance of the agreement implies nothing of the sort. Without a partnership, Lyon owes no fiduciary duty to Illinois Paper. Thus, Lyon could not have breached such a duty, and Third-Party Defendants could not have aided or abetted such a breach. The Court therefore grants the parties' motions to dismiss those claims.

### C. Breach of contract

Illinois Paper also claims that Johnson and the Village breached their contract when they stopped paying the lease. The parties dispute whether Illinois Paper has standing to sue the Village for its breach of the Lease Agreement or even for some other integrated contract between Lyon, Illinois Paper, and the Village. However, as a threshold matter, the Court must determine whether the contract at issue was enforceable.

Illinois Paper's contention that the Village breached the contract is apparently based on its belief that the contract is enforceable despite the fact that the Illinois Municipality Code only allows municipalities to enter into equipment leases "for a period not to exceed 5 years." 65 Ill. Comp. Stat. 5/11-76-6. Illinois Paper does not dispute the Village's contention that the Code renders a six-year lease unenforceable. Instead, it argues that the Lease Agreement was not a lease at all, but a purchase agreement. It bases its argument on two provisions in the agreement.

First, Illinois Paper notes that the agreement purported to govern "acquisition" of the equipment, which the company interprets to mean purchase. Second, it notes that the agreement provided the Village with an option to buy the equipment for fair market value at the conclusion of the six-year term. The company avers that the value of copying equipment after six years is essentially zero and thus, the contract effectively provides for purchase without any additional payments by the Village.

In short, Illinois Paper's argument flies in the face of the contractual language. Oddly, Illinois Paper, who bases its argument above that the Finance Agreement formed a partnership entirely on the title of the agreement, urges the Court to not only ignore the title of the Lease Agreement ("Value Lease Agreement"), but to ignore virtually all of the language therein. The agreement clearly provides for a lease of equipment for a six-year term with monthly payments of $9,500. The agreement does provide the Village with an option to buy the equipment at the end of the lease. But it also provides the Village with the option to renew the lease or return the equipment at the end of the lease. The fact that such a purchase may not require any additional payment does not automatically convert the agreement to a purchase agreement. In fact, if Illinois Paper's dubious claim that copying equipment would be worth nothing at the conclusion of the six-year term is true, the Village may be better off returning it to Lyon than purchasing it without making any additional payments. But even if the claim is that by the end of the lease, the Village would have already paid more than the fair market value of the equipment, it will not suffice to prove that the agreement was for a purchase. Illinois Paper does not cite to a single case holding that a Court may construe a lease agreement with an option to buy as a purchase agreement simply because the lessee ultimately ends up paying more than the original fair market value of the leased property in monthly payments.

Nor does the presence of the word "acquisition" create ambiguity. One can acquire possession of property temporarily. The term does not necessarily imply permanent ownership. And given all of the other provisions to the agreement, it would be unreasonable for the Court to read the term to mean purchase in this instance. Thus, the Court grants Third-Party Defendants' motion to dismiss the breach of contract claim as well.

### *CONCLUSION*

For these reasons, the Court GRANTS Counter-Defendant's and Third-Party Defendants' motions to dismiss.

IT IS SO ORDERED.

5/4/11
Dated

Hon. William J. Hibbler
United States District Court